Estado Libre Asociado de Puerto Rico
**TRIBUNAL DE APELACIONES**
**PANEL VIII**

| | | |
|---|---|---|
| Urayoán Hernández Alvarado<br><br>Apelante<br><br>vs.<br><br>Comisión Electoral del Partido Nuevo Progresista Aníbal Vega Borges de por sí y en representación del P.N.P; Comisión Estatal de Elecciones; Jessika D. Padilla Rivera, presidenta de la CEE; Luis (Josean) Jiménez Torres, aspirante certificado como candidato por el Distrito representativo Núm. 26; Comisionada Electoral del MVC, Lcda. Lilliam Aponte Dones; Comisionada Electoral del P.P.D., Lcda. Karla Angleró; Comisionado Electoral del Proyecto Dignidad, Lcdo. Juan Manel Frontera; Comisionado Electoral del P.I.P., Roberto Iván Aponte<br><br>Apelados | KLCE202400906 | ***CERTIORARI* acogido como APELACIÓN** procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Civil Núm.:<br><br>SJ2024CV06458<br><br><br><br>Sobre: Art. 13.1 Revisión de Determinación de la CEE; *Mandamus* Art. 649 del Cod. De Enjuiciamiento Civil de 1933, 32 LPRA Sec. 3421 y Sentencia Declaratoria Regla 59 seq., Reglas de Procedimiento Civil de Puerto Rico |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Adames Soto y la Jueza Santiago Calderón.

Rivera Colón, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 3 de septiembre de 2024.

Comparece ante nos, el señor Urayoán Hernández Alvarado (Sr. Hernández Alvarado o apelante), quien presenta recurso de *Certiorari* en el que solicita la revocación de la "Sentencia" emitida

Número Identificador

SEN2024 _____

el 7 de agosto de 2024,[1] por el Tribunal de Primera Instancia, Sala Superior de San Juan.  Mediante dicho dictamen, el foro primario desestimó la Querella presentada por el apelante.

Tras examinar la naturaleza y procedencia del caso de autos, el auto de *Certiorari* presentado ante nuestra consideración será acogido como un recurso de apelación, aunque conservará la clasificación alfanumérica asignada por la Secretaría de este Tribunal.

Examinada la solicitud de autos, los escritos en oposición sometidos por los apelados, la totalidad del expediente y el estado de derecho aplicable ante nuestra consideración, confirmamos la "Sentencia" apelada, por los fundamentos que expondremos a continuación.

## I.

El 2 de junio de 2024, se celebraron las primarias del Partido Nuevo Progresista (PNP), con el fin de nominar a los candidatos para ciertos cargos públicos electivos.[2]  El Sr. Hernández Alvarado y el señor Luis (Josean) Jiménez Torres (Sr. Jiménez Torres) fueron aspirantes a la candidatura de representante por el distrito representativo número 26.[3]  El escrutinio general de las primarias del PNP comenzó el 5 de junio de 2024.[4]  Al día siguiente, o sea, el 6 de junio de 2024, la Comisión Estatal de Elecciones (CEE) emitió una **certificación preliminar** de los resultados reflejando un total de 10,649 votos, con una ventaja de **169 votos** en favor del Sr. Jiménez Torres.[5]

---

[1] Notificada ese mismo día. Véase, además, SUMAC entrada número 27.

[2] Véase, "Sentencia" determinación de hechos número 3.

[3] Véase, "Sentencia" determinación de hechos número 1 y 2.

[4] Véase, Sección 1 Regla 3 del "Manual de Procedimientos para el Escrutinio General y Primarias del Partido Nuevo Progresista 2024".

[5] El Sr. Jiménez obtuvo 5,409 votos, mientras que el Sr. Hernández Alvarado obtuvo 5,240 votos. Tomamos conocimiento judicial de este hecho, el cual surge del portal electrónico de la CEE. Véase, https://primarias2024.ceepur.org/PRIMARIAS_LOCALES_2024_PNP_74/Noche_del_Evento_115/index.html#es/default_list/REPRESENTANTES_POR_DISTRITO_Distritos_Representativos.xml; Véase, "Alegato en Oposición a Recurso de *Certiorari*" pág. 26.

Así las cosas, el 10 de junio de 2024, el Sr. Hernández Alvarado cursó una misiva a la entonces Comisionada Electoral del PNP, la Lcda. Vanessa Santo Domingo, en la que solicitó un proceso de recuento para la candidatura a representante por el Distrito 26.[6]  Expresó que, si se contabilizan los votos de los 15 colegios que no reportaron información a la CEE en la noche del evento, la candidatura se encontraría dentro de los parámetros para activar al proceso de recuento conforme las disposiciones del Código Electoral de 2020 y el Reglamento de primarias.[7]

Al día siguiente, entiéndase, el 11 de junio de 2024, la CEE le informó al apelante que "[e]n el caso del Distrito Representativo [sic] Número 26 no hay recuento conforme a lo establecido en el Artículo 10.8 del Código Electoral".[8]  En descontento, el 13 de junio de 2024, el Sr. Hernández Alvarado peticionó la reconsideración de esta determinación, y reiteró que, si se contabilizan los votos de los colegios que no reportaron información, procedería el recuento.[9]

Culminado el escrutinio, el 29 de junio de 2024, la CEE emitió una **certificación final** informando los resultados finales del evento primarista celebrado el 2 de junio de 2024. Dicha certificación reflejó un total de 12,997 votos, con una ventaja de **117 votos** en favor del Sr. Jiménez Torres.[10]  En el documento se hizo la siguiente advertencia:

> ***Se emite esta Certificación para los efectos legales pertinentes relacionados con el término de diez (10) días que concede el Artículo 10.15 de Código Electoral de Puerto Rico**, Ley Núm. 58-2020, **para impugnar esta Certificación ante el Tribunal de Primera Instancia correspondiente***.

(Énfasis nuestro).

---

[6] Véase, "Sentencia" determinación de hechos número 5.

[7] Véase, "Solicitud de Recuento para Candidatura a Representante Distrito 26" pág. 2.

[8] Véase, "Sentencia" determinación de hechos número 6.

[9] Véase, "Reconsideración Decisión de la Comisionada Electoral del PNP a Solicitud de Recuento para Candidatura a Representante Distrito 26"; apéndice pág. 179.

[10] El Sr. Jiménez obtuvo 6,557, mientras que el Sr. Hernández Alvarado obtuvo 6,440 votos. Véase, "Alegato en Oposición a Recurso de *Certiorari*" pág. 221.

En igual fecha, o sea, el 29 de junio de 2024, el Sr. Hernández Alvarado envió una carta a la Comisionada Electoral PNP, y reafirmó tener derecho a un recuento. En su escrito, reconoció que la CEE divulgó el "**resultado final**, **luego del escrutinio general**".[11] (Énfasis en el original).

El 1 de julio de 2024, la Comisionada Electoral PNP certificó que el Sr. Jiménez Torres obtuvo la mayoría de los votos para ser nominado como candidato oficial del PNP en las elecciones generales.[12]

Inconforme, el 11 de julio de 2024, el Sr. Hernández Alvarado presentó una Querella[13] contra, entre otras partes, el Comisionado Electoral del Partido Nuevo Progresista, el señor Aníbal Vega Borges (en adelante, Comisionado del PNP), la CEE y el Sr. Jiménez Torres (en conjunto, apelados). En resumidas cuentas, el apelante alegó que, debido a un error de tabulación en los colegios de votación, la CEE transmitió incorrectamente los resultados, no solamente el día en que fueron celebradas las primarias, sino también en el proceso de escrutinio. Arguyó que, en base a estas irregularidades, la CEE certificó que el ganador de la primaria en cuestión era el Sr. Jiménez Torres. Empero, adujo que, en realidad, las actas demuestran una diferencia de 98 votos entre ambos aspirantes, por lo que, en virtud del Art. 10.8 del Código Electoral, *infra*, se hace mandatorio la ejecución de un recuento. Por lo anterior, solicitó que: (1) se dejase sin efecto la certificación de candidato emitida por la CEE, (2) se emita sentencia declaratoria estableciendo su derecho a un recuento, y (3) se ordene dicho recuento mediante un *mandamus*.

---

[11] Véase, "Segundo Informe de Incidencias Durante el Proceso de Escrutinio General para la Candidatura de Representante por el Distrito Representativo #26 y Estatus de Reconsideración Decisión de la Comisionada Electoral del PNP a Solicitud de Recuento para Candidatura a Representante de Distrito Representativo 26"; apéndice pág. 182.

[12] Véase, "Sentencia" determinación de hechos número 11.

[13] Véase, apéndice pág. 18.

El 17 de julio de 2024, el Comisionado del PNP, la CEE y el Sr. Jiménez Torres presentaron sus respectivas solicitudes de desestimación. El Comisionado del PNP y el Sr. Jiménez Torres argumentaron que el Tribunal de Primera Instancia carecía de jurisdicción para atender la controversia. Fundamentaron su postura en el Art. 10.15 del Código Electoral, *infra*, el cual dispone que un candidato ostenta un término de 10 días para impugnar la elección de otro, a computarse desde la fecha de notificación de la certificación de la elección. Toda vez que la antedicha certificación se le notificó al apelante el 29 de junio de 2024, y este último presentó su Querella el 11 de julio de 2024, esgrimieron que el escrito se radicó de forma tardía. Por su parte, la CEE sostuvo que: (1) el asunto no es justiciable por haberse tornado académico y por ser prematuro; (2) las alegaciones no son suficientes para activar un recuento, según las disposiciones del Código Electoral; (3) el apelante incurrió en incuria al no solicitar oportunamente la revisión; (4) el recurso de *mandamus* y la solicitud de sentencia declaratoria son improcedentes en derecho; y (5) no se alegan hechos suficientes que ameriten la concesión de un remedio.

Al día siguiente, entiéndase, el 18 de julio de 2024, el foro *a quo* celebró una vista argumentativa a la cual, por conducto de sus representantes legales, comparecieron el apelante, el Comisionado del PNP, la CEE y el Sr. Jiménez Torres. En dicha audiencia las partes tuvieron la oportunidad de argumentar sus posturas y, en esencia, reafirmaron lo esbozado en sus escritos. El tribunal les concedió oportunidad para presentar escritos adicionales.

A tenor, el 24 de julio de 2024, el Sr. Hernández Alvarado presentó su oposición a las solicitudes de desestimación presentadas por el Comisionado del PNP, la CEE y el Sr. Jiménez Torres. En síntesis, expuso que: (1) la Querella se presentó en término, ya que éste comenzó a transcurrir el 1 de julio del 2024,

fecha en que se certificó al Sr. Jiménez Torres como ganador, (2) el Art. 10.15 del Código Electoral, *infra*, solo es aplicable a elecciones generales, y no al proceso de primarias regido por el Capítulo VII del Código Electoral, (3) no hubo incuria, puesto que se reclamó en varias ocasiones a la Comisión de Primarias para que cumpliera con su deber de contabilizar a mano las papeletas, (4) los apelados no lograron establecer, conforme los criterios de la Regla 10.2 de Procedimiento Civil, *infra*, que el apelante no tiene derecho a remedio alguno, (5) se cumplen los requisitos para solicitar el *mandamus*, y (6) una vez cumplida la obligación ministerial de contabilizar manualmente las papeletas, si la diferencia aritmética entre ambos aspirantes es de 100 votos o menos, procede el recuento.

En respuesta, el Comisionado del PNP y el Sr. Jiménez Torres presentaron sus réplicas el 29 de julio de 2024. Tanto el Comisionado del PNP, así como el Sr. Jiménez Torres, se reiteraron en que el tribunal carecía de jurisdicción para atender la Querella presentada por el apelante. En vista de ello, expusieron que los demás remedios solicitados eran académicos.

Por otro lado, el 2 de agosto de 2024, la CEE presentó una dúplica en la cual manifestó que: (1) no existe derecho a un recuento luego de culminado el escrutinio y basado en la certificación final producto de ese escrutinio, y (2) el apelante no estableció un caso *prima facie* que le permita hacer una impugnación del resultado de la elección.

Evaluadas las posturas de ambas partes, el 7 de agosto de 2024,[14] el Tribunal de Primera Instancia emitió una "Sentencia" y declaró No Ha Lugar la Querella presentada por el Sr. Hernández Alvarado. En primer lugar, concluyó que no se cumplen los requisitos para la expedición del *mandamus*, ya que existe otro

---

[14] Notificada el 7 de agosto de 2024; Véase, SUMAC entrada 27.

remedio en ley para atender los reclamos del apelante. Por otro lado, determinó que tampoco procede el mecanismo de sentencia declaratoria, debido a la existencia de un procedimiento administrativo específico para atender el asunto en controversia. Finalmente, dispuso que no procedía dejar sin efecto la certificación del Sr. Jiménez Torres, toda vez que esto equivaldría a dejar sin efecto los resultados de las primarias, acción que debió impugnarse mediante la presentación de un recurso al amparo del Art. 10.15 del Código Electoral, *infra.*

Insatisfecho con el dictamen, el Sr. Hernández Alvarado recurre ante este foro apelativo intermedio, y señala la comisión de los siguientes errores, a saber:

> *Primer Error: El TPI erró al determinar que el recurso presentado por Urayoán Hernández Alvarado debió presentarse dentro del término de diez (10) días, contados a partir del 29 de junio de 2024.*
>
> *Segundo Error: El TPI erró al desestimar la causa de acción presentada por Urayoán Hernández Alvarado ignorando el estándar de prueba aplicable a las mociones de desestimación presentadas al amparo de la Regla 10.2 (5) de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2.*

## II.

### -A-

La Regla 10.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2, le permite al demandado solicitar que se desestime la demanda en su contra antes de contestarla. R. Hernández Colón, Práctica Jurídica de Puerto Rico, Derecho Procesal Civil, 5ta ed., San Juan, LexisNexis de Puerto Rico, Inc., 2010, pág. 266. La precitada regla dispone lo siguiente:

> *Toda defensa de hechos o de derecho contra una reclamación se expondrá en la alegación responsiva excepto que, a opción de la parte que alega, las siguientes defensas pueden hacerse mediante una moción debidamente fundamentada: (1) falta de jurisdicción sobre la materia; (2) falta de jurisdicción sobre la persona; (3) insuficiencia del emplazamiento; (4) insuficiencia del diligenciamiento del emplazamiento; (5) dejar de exponer una reclamación que justifique la*

*concesión de un remedio; (6) dejar de acumular una parte indispensable.*

Al resolver una solicitud de desestimación fundamentada en el inciso (5) de la precitada regla, el tribunal está obligado a dar por ciertos, y de la forma más favorable para el demandante, todos los hechos bien alegados en su reclamación, siempre y cuando hayan sido aseverados de manera clara y concluyente. *Eagle Security v. Efrón Dorado et al.*, 211 DPR 70, 78 (2023). Es decir, "[l]a demanda no deberá desestimarse a menos que se demuestre que el demandante no tiene derecho a remedio alguno, bajo cualesquiera hechos que pueda probar". *Aut. Tierras v. Moreno & Ruiz Dev. Corp.*, 174 DPR 409, 428 (2008).

Al atender este tipo de moción, el tribunal deberá tener en cuenta que, conforme lo dispone la Regla 6.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 6.1, la demanda solo tiene que contener "una relación sucinta y sencilla de la reclamación demostrativas de que el peticionario tiene derecho a un remedio", por lo que la norma procesal que rige establece que las alegaciones solo buscan "notificarle a la parte demandada a grandes rasgos, cuáles son las reclamaciones en su contra." *Torres, Torres v. Torres et al.*, 179 DPR 481, 501 (2010).

Ahora bien, **la demanda tiene que establecer una reclamación plausible que justifique la concesión de un remedio**. *Costas Elena y otros v. Magic Sport y otros*, 2024 TSPR 13. **Esto es**, **las alegaciones conclusorias no son suficientes y no deben presumirse como ciertas**.   R. Hernández Colón, Derecho Procesal Civil, 6ta ed., San Juan, LexisNexis, 2017, pág. 307.  Por ende, si el Tribunal entiende que se incumple con el estándar de plausibilidad, "entonces debe desestimar la demanda, pues no puede permitir que proceda una demanda insuficiente bajo el pretexto de que se podrán probar las alegaciones

conclusorias con el descubrimiento de prueba". *Costas Elena y otros v. Magic Sport y otros, supra.*

**-B-**

El *mandamus* es un recurso discrecional y altamente privilegiado mediante el cual se le exige a una persona natural o jurídica el cumplimiento de un deber ministerial que esté dentro de las atribuciones o deberes del cargo que ocupa. Art. 649 del Código de Enjuiciamiento Civil, 32 LPRA sec. 3421. Un deber ministerial es aquel impuesto por ley y que la parte demandada tiene que cumplir; o sea, que no admite discreción en el ejercicio de su cumplimiento. *Kilómetro 0 v. Pesquera López et al.*, 207 DPR 200, 214 (2021). Es decir, "la ley no sólo debe autorizar, sino exigir la acción requerida". *AMPR v. Srio. Educación, E.L.A.*, 178 DPR 253, 264 (2010), citando a R. Hernández Colón, Derecho Procesal Civil, 4ta ed., San Juan, LexisNexis, 2007, pág. 477.

Por tanto, si el acto cuya ejecución se solicita depende de la discreción o el juicio del funcionario, el deber no puede considerarse como uno ministerial. *Romero, Valentín v. Cruz, CEE et al.*, 205 DPR 972, 985 (2020). Los deberes discrecionales, por no ser ministeriales, quedan fuera del ámbito del recurso de *mandamus*. *AMPR v. Srio. Educación, E.L.A.*, *supra*, a la pág. 264.

Es importante recalcar que, la determinación de si existe un deber ministerial "es una cuestión sujeta a interpretación judicial que no depende de un juicio *a priori* fundado exclusivamente en la letra del estatuto". *Íd.* Sino que, esta determinación tiene que surgir del examen y análisis "de todos los elementos de juicio disponibles para así descubrir el verdadero significado y propósito de la disposición legal". *Íd.*, a la pág. 265.

No basta con una mera directriz o disposición legal que requiera al funcionario público hacer algo, sin más. *Íd.*, a la pág. 264. Resulta necesaria la existencia de un mandato específico que

la parte demandada tiene que cumplir, sin que este último tenga la potestad de decidir si cumple o no el acto solicitado. *Íd.*

Por tratarse de un recurso extraordinario, el *mandamus* solo estará disponible cuando el peticionario demuestre que carece de "un recurso adecuado y eficaz en el curso ordinario de la ley". Art. 651 del Código de Enjuiciamiento Civil, 32 LPRA sec. 3423. A su vez, la parte peticionaria deberá demostrar que hizo un requerimiento previo, y que dicho requerimiento no fue debidamente atendido por el demandado. *Romero, Valentín v. Cruz, CEE et al.*, *supra*, a la pág. 985.

Por su parte, al momento de considerar si procede o no conceder el *mandamus* solicitado, el tribunal deberá analizar, entre otros factores, los intereses públicos involucrados, y el impacto sobre la Rama Ejecutiva y los derechos de terceros. *Íd.*

Finalmente, debemos enfatizar que, el recurso de *mandamus*, tratándose un recurso extraordinario, solo procede en situaciones excepcionales y deber utilizarse con cautela. *AMPR v. Srio. Educación, E.L.A.*, *supra*, a la págs. 295-296. En atención a ello, y como regla general, nuestra jurisprudencia ha reiterado la necesidad de que el demandado sea interpelado, como requisito para considerar una solicitud de *mandamus*. *Íd.*, a la pág. 296. Esta norma tiene excepciones como, por ejemplo, cuando se trata de un asunto de interés público, o casos que involucran asuntos de naturaleza electoral. *Íd.*

-C-

La sentencia declaratoria es el mecanismo utilizado "para declarar derechos, estados y otras relaciones jurídicas, aunque existan otros remedios disponibles". *Amadeo Ocasio et al. v. Gobernador et al.*, 211 DPR 278, 285 (2023); Regla 59 de Procedimiento Civil, 32 LPRA Ap. V, R. 59. Este recurso extraordinario, cuyo propósito es remedial y profiláctico, "permite

anticipar la dilucidación de los méritos de cualquier reclamación ante los tribunales, siempre y cuando exista un peligro potencial contra quien la solicita". *Senado de PR v. ELA*, 203 DPR 62, 71 (2019), citando a *Alcalde Guayama v. ELA*, 192 DPR 329, 333 (2015). Se trata, en principio, de recurrir ante el foro judicial con el fin de que el tribunal disipe una incertidumbre jurídica en aquellas instancias en la cuales existen intereses legales adversos, sin la necesidad que medie lesión previa de los mismos. *Beltrán Cintrón et al. v. ELA et al.*, 204 DPR 89, 109 (2020), citando a R. Hernández Colón, Práctica Jurídica de Puerto Rico: Derecho Procesal Civil, 5ta ed., San Juan, Ed. LexisNexis, 2010, pág. 560. En ese sentido, el foro primario podrá: (1) decidir sobre cualquier divergencia en la interpretación o validez de un estatuto, ordenanza, contrato o franquicia y, (2) dictar una declaración de los derechos, estados u otras relaciones jurídicas que de aquéllos se deriven. *Amadeo Ocasio et al. v. Gobernador et al.*, *supra*, a la pág. 357.

Aunque la Regla 59 de Procedimiento Civil, *supra*, provee que la sentencia declaratoria puede ser utilizada aun cuando existan otros remedios disponibles en ley, lo cierto es que, nuestra Alta Curia ha sostenido que este recurso es improcedente "cuando el legislador ha desarrollado un procedimiento administrativo específico para atender el asunto en controversia". *Beltrán Cintrón et al. v. ELA et al.*, supra, a la pág. 109. O sea, que, cuando por virtud de ley, la Asamblea Legislativa conceda jurisdicción primaria a determinada agencia para atender un asunto, tal mandato no puede obviarse mediante sentencia declaratoria. Lo anterior, debido a la necesidad de: (1) cumplir con la intención legislativa, y (2) que se hayan agotado los remedios administrativos. *Íd.*, citando a D. Fernández Quiñones, Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme, 3ra ed., Bogotá, Ed.

Forum, 2013, págs. 747-748. En estos casos, resulta preciso evaluar las alegaciones concretas, con el propósito de determinar si es posible eludir el trámite administrativo y acudir directamente al foro judicial. *Íd.* a la pág. 113.

**-D-**

El Código Electoral de Puerto Rico de 2020, Ley Núm. 58-2020, 16 LPRA sec. 4501 *et seq.*, según enmendada, provee el marco legal que regula nuestro sistema electoral. En lo que nos atañe, el Capítulo VII del mencionado cuerpo legal regula lo concerniente a las primarias, o sea, el proceso a través del cual se seleccionan los candidatos a cargos públicos electivos para determinado partido político. Véase, Art. 2.3 (92) del Código Electoral, 16 LPRA sec. 4503. El aludido Capítulo VII reconoce la creación de la Comisión de Primarias, que será el organismo facultado para realizar primarias y aprobar el reglamento que regirá dicho proceso. Véase, Art. 7.1 del Código Electoral, 16 LPRA sec. 4611. Esta Comisión estará compuesta por dos personas, a saber: (1) el Presidente de la Comisión, y (2) el Comisionado Electoral del Partido Político que deba realizar primarias. *Íd.*

Cuando la Comisión reciba todas las papeletas y materiales de una votación, procederá entonces a realizar el escrutinio. Véase, Art. 10.7 del Código Electoral, 16 LPRA sec. 4757. El resultado final surgirá luego de efectuado el escrutinio o el recuento, si es que aplica, y deberá ser certificado por la Comisión. *Íd.* El aspirante que obtenga la mayoría de los votos resultará vencedor, y será nominado como candidato oficial del Partido Político en la próxima elección general. Véase, Art. 7.21 del Código Electoral, 16 LPRA sec. 4633.

Conforme el Art. 10.11 del Código Electoral, 16 LPRA sec. 4761, la Comisión certificará electo a los candidatos que reciban la mayor cantidad de votos. Como constancia de ello, expedirá un

**certificado de elección**, el cual será entregado al candidato electo. *Íd.* Si algún otro aspirante no estuviese de acuerdo, y desee impugnar la elección del candidato electo, deberá presentar un recurso de revisión ante el Tribunal "**dentro de los diez (10) días siguientes a la fecha de notificación de la <u>certificación de elección</u>** para cada cargo público electivo en el escrutinio general". Véase, Art. 10.15 del Código Electoral, 16 LPRA sec. 4765. (Énfasis suplido). En su escrito, deberá exponer, bajo juramento, los fundamentos para su impugnación, los que deberán ser de tal naturaleza que, de probarse, podrían cambiar el resultado de la elección. *Íd.*

En términos similares, el Art. 13.2 del Código Electoral, 16 LPRA sec. 4842, provee lo siguiente:

> *Con excepción de otra cosa dispuesta en esta Ley:*
>
> *Cualquier Comisionado Electoral o parte adversamente afectada por una decisión, resolución, determinación u orden de la Comisión o la Comisión Local podrá, **dentro de los diez (10) días siguientes a la notificación de esta**, recurrir al Tribunal de Primera Instancia con la presentación de un recurso legal de **revisión**.*

(Énfasis provisto).

Resulta pertinente mencionar, además, que el Código Electoral reconoce dos tipos de certificaciones: (1) **certificación preliminar o parcial**, y (2) **certificación final**. Véase, Art. 2.3 (17) del Código Electoral, *supra.*

El propio Código Electoral define el término de "**certificado de elección**" como aquel "[**d**]**ocumento donde la Comisión declara electo a un candidato a un cargo público electivo o el resultado de cualquier elección**, **después de un escrutinio general o recuento**". Véase, Art. 2.3 (18) del Código Electoral, *supra.* (Énfasis provisto).

Esta terminología es importante, ya que, como explicamos, el Art. 10.11 del Código Electoral, *supra,* permite a un candidato

impugnar la elección de otro a partir de que se expide el **certificado de elección** que, según la definición discutida, constituye propiamente una **certificación final**.

Ahora bien, según discutiremos a continuación, las disposiciones relativas al **recuento** no aluden al **certificado de elección** o **certificación final**. Sino que, por el contrario, se refieren al **resultado parcial o preliminar**. Veamos.

En cuanto a cuándo procede un recuento electoral, véase, Art. 10.8 del Código Electoral, 16 LPRA sec. 4758, dispone lo siguiente:

> *Cuando el **resultado parcial o preliminar** de una elección arroje una diferencia entre dos candidatos a un mismo cargo público electivo de cien (100) votos o menos, o del punto cinco por ciento (.5%) o menos del total de votos adjudicados para ese cargo, la Comisión realizará un Recuento de los votos emitidos en los colegios de votación que conformen la demarcación geoelectoral de la candidatura afectada por este resultado estrecho.*

(Énfasis nuestro).

Como puede observarse, el texto claro y literal del estatuto requiere que, para que un candidato tenga derecho a recuento, debe ocurrir alguna de estas dos posibilidades: (1) que del **resultado parcial o preliminar** surja una diferencia de 100 votos o menos entre los candidatos a un mismo cargo público electivo, (2) que del **resultado parcial o preliminar** surja una diferencia del 0.5% o menos del total de votos adjudicados hasta ese momento.

Esto es importante, pues, según expresó nuestro Tribunal Supremo, "**el Código Electoral de 2020 reconoce que los resultados que se evaluarán para determinar si procede hacer un recuento <u>son los parciales y preliminares</u>, no los resultados del Escrutinio General**". *Romero, Valentín v. Cruz, CEE et al.*, 205 DPR 972, 989 (2020). (Énfasis suplido).

Asimismo, el propio Art. 10.8 del Código Electoral, *supra,* establece que, **mientras no se culmine el recuento**, **no se**

**certificará al ganador de la contienda electoral**.  Recordemos que la Comisión certificará al ganador mediante un **certificado de elección**. Véase, Art. 10.11 del Código Electoral, *supra.* **Esto necesariamente implica que el recuento tiene que efectuarse durante el proceso de escrutinio**, **y no después de culminado el mismo**.

Ello es evidente cuando, el Art. 10.9 del Código Electoral, 16 LPRA sec. 4759, provee que, terminado el escrutinio, si surge un empate entre dos candidatos, lo que procede es realizar una nueva elección; no un recuento, pues ya este proceso se debió haber hecho durante el escrutinio general.

Reiteramos que, **los resultados preliminares son necesarios para llevar a cabo un recuento conforme al Art. 10.8 del Código Electoral**, *supra*. Véase, *Romero, Valentín v. Cruz, CEE et al.*, *supra*, a la pág. 995.

### III.

Según el trámite procesal discutido, el Sr. Hernández Alvarado presentó una Querella solicitando sentencia declaratoria para que se reconociera su derecho a un recuento, conforme las disposiciones del Código Electoral.  Adicionalmente, peticionó un *mandamus* para que se ordenara a la CEE y a la Comisión de Primarias a efectuar dicho recuento.  Finalmente, exigió se dejase sin efecto la certificación del Sr. Jiménez Torres.  El Tribunal de Primera Instancia emitió "Sentencia" mediante la cual declaró No Ha Lugar la Querella presentada por el apelante.  Razonó que no se cumplieron los criterios para conceder el *mandamus* y la sentencia declaratoria.  Asimismo, dispuso que no procedía dejar sin efecto la certificación emitida por la CEE nominando al Sr. Jiménez Torres como candidato oficial del PNP en la próxima elección general, ya que dicha petición constituye una

impugnación de elección y debió presentarse al amparo del Art. 10.15 del Código Electoral, *supra*.

En su escrito, el Sr. Hernández Alvarado nos solicita que revoquemos la determinación del foro recurrido por dos razones. En primer lugar, sostiene que el Tribunal contabilizó mal el término jurisdiccional de 10 días en el cual el apelante debía acudir al foro judicial. Su contención es que su recurso fue presentado oportunamente, ya que el término para recurrir comenzó a transcurrir el 1 de julio del 2024, fecha en que la CEE certificó como candidato oficial del PNP al Sr. Jiménez Torres. Argumenta que el Art. 10.15 del Código Electoral, *supra*, es inaplicable al caso, y que no se le notificó la certificación final emitida el 29 de junio de 2024.

Además, el apelante sostiene que el foro *a quo* ignoró el estándar de prueba aplicable a las mociones de desestimación presentadas al amparo de la Regla 10.2 de Procedimiento Civil, *supra*. Afirma que, dando por ciertas sus alegaciones, la diferencia en votos es de 98 votos y, por ende, procede el recuento solicitado.

Evaluados sus argumentos, así como las posturas de los apelados en sus respectivos escritos, concluimos que el Sr. Hernández Alvarado no tiene razón y, consecuentemente, procede la confirmación de la "Sentencia" apelada. Veamos.

El 6 de junio de 2024, la CEE emitió una **certificación preliminar** de los resultados reflejando un total de 10,649 votos, con una ventaja de **169 votos** en favor del Sr. Jiménez Torres. En esta certificación preliminar se aclaró que:

> ***Esta certificación no conlleva la certificación formal o informal de ningún aspirante. Una vez se efectúe el Escrutinio General o Recuento,*** *de conformidad con el Artículo 10.7 o el Artículo 10.8 del Código Electoral de Puerto Rico de 2020, Ley Núm. 58 de 2020, según aplique, así como también el reglamento y/o manual aplicable,* ***la Comisión de Primarias certificará como candidato oficial al aspirante que haya recibido el mayor número de votos***.

(Énfasis provisto).

El propósito de este resultado **preliminar** de la contienda fue comenzar el escrutinio general **y evaluar si correspondía realizar un recuento**. Conforme el derecho discutido, **los resultados preliminares son los que se tomarán en consideración al momento de determinar si procede o no llevar a cabo un recuento conforme al Art. 10.8 del Código Electoral**, *supra*. Según ha resuelto nuestro Alto Foro, "**el Código Electoral de 2020 reconoce que los resultados que se evaluarán para determinar si procede hacer un recuento** <u>son los parciales y preliminares</u>, **no los resultados del Escrutinio General**". *Romero, Valentín v. Cruz, CEE et al.*, *supra*, a la pág. 989. (Énfasis nuestro).

Aunque el Sr. Hernández Alvarado informó tener derecho a recuento el 10 de junio de 2024, lo cierto es que, tal y como le informó la entonces Comisionada Electoral del PNP el 11 de junio de 2024, y conforme el Art. 10.8 del Código Electoral, *supra*, **el apelante no tenía derecho al recuento solicitado**.[15]

Como ya explicamos, para que un aspirante tenga derecho a recuento, debe ocurrir alguna de estas dos posibilidades: (1) que del **resultado parcial o preliminar** surja una diferencia de 100 votos o menos entre los candidatos a un mismo cargo público electivo, (2) que del **resultado parcial o preliminar** surja una diferencia del 0.5% o menos del total de votos adjudicados hasta ese momento. **En el presente caso no está presente ninguna de las siguientes circunstancias**, **pues**, **al momento en que se emitió la certificación preliminar**, **la ventaja del Sr. Jiménez**

---

[15] Queremos señalar que el Sr. Hernández Alvarado no recurrió de esta determinación al tribunal, y tampoco reconsideró dentro del término que dispone el Art. 13.2 del Código Electoral, *supra*.

**Torres era por 169 votos. En ese momento, el apelante no tenía el derecho para reclamar recuento alguno.**

Posteriormente, **y habiendo ya culminado el escrutinio general**, el 29 de junio de 2024, la CEE emitió una **certificación final** informando los resultados finales del evento primarista celebrado el 2 de junio de 2024. Dicha certificación advirtió lo siguiente:

> *Se emite esta Certificación para los efectos legales pertinentes relacionados con el término de diez (10) días que concede el Artículo 10.15 de Código Electoral de Puerto Rico, Ley Núm. 58-2020, para impugnar esta Certificación ante el Tribunal de Primera Instancia correspondiente.*

(Énfasis suplido).

**Aun cuando al Sr. Hernández Alvarado se le advirtió sobre su derecho a revisar la elección, y admitió que conocía de esta certificación final, pues, el mismo 29 de junio de 2024 reconoció que la CEE divulgó el "resultado final, luego del escrutinio general",**[16] **este no solicitó la revisión de dicha certificación dentro de los 10 días de haberse emitido la misma.** (Énfasis nuestro). **Sino que, el apelante recurrió al Tribunal de Primera Instancia el 11 de julio de 2024, o sea, 12 días después de emitida la certificación final.**

Sin embargo, el Sr. Hernández Alvarado insiste en que el término de 10 días para recurrir comenzó a transcurrir el 1 de julio del 2024, fecha en que la CEE certificó al candidato oficial del PNP, conforme el Art. 7.21 del Código Electoral, *supra*. No le asiste la razón.

El 29 de junio de 2024, la CEE certificó los **resultados finales** de la primaria, e informó para cada cargo al candidato con mayor cantidad de votos. Además, advirtió sobre el derecho a

---

[16] Véase, "Segundo Informe de Incidencias Durante el Proceso de Escrutinio General para la Candidatura de Representante por el Distrito Representativo #26 y Estatus de Reconsideración Decisión de la Comisionada Electoral del PNP a Solicitud de Recuento para Candidatura a Representante de Distrito Representativo 26"; apéndice pág. 182.

solicitar impugnación de elección, conforme el Art. 10.15 de Código Electoral, *supra*. Debido a que el Sr. Hernández Alvarado fundó su solicitud en la certificación final, **concluimos que esta certificación constituye la certificación de elección que dispone el Art. 10.15 del Código Electoral**, *supra*, **ya que por medio de esta se certificó a los candidatos que recibieron la mayor cantidad de votos**, **y se incluyeron las advertencias de rigor**. Por ende, el término de 10 días para impugnar la elección comenzó a decursar el 29 de junio de 2024, y el apelante tenía hasta el 9 de julio de 2024 para presentar su recurso de revisión. Así, **la Querella presentada por el Sr. Hernández Alvarado fue tardía**, y el foro primario carecía de jurisdicción para atenderla.

Debemos mencionar que, aunque el apelante alega que el Art. 10.15 de Código Electoral, *supra*, es inaplicable al caso, lo cierto es que, en primer lugar, su Querella comienza por mencionar que "se trata de una **impugnación de elección** en el pasado proceso primarista".[17] (Énfasis suplido). Segundo, su Querella se presentó **bajo juramento**, según lo exige el propio Art. 10.15 de Código Electoral, *supra*. Tercero, el Sr. Hernández Alvarado solicitó, como parte de los remedios, que se deje sin efecto la certificación del Sr. Jiménez Torres **cuyo efecto equivale a dejar sin efecto la elección**.

No obstante, queremos aclarar que, aun dando por cierto que la certificación emitida por la CEE que activa el término dispuesto en el Art. 10.15 del Código Electoral, *supra*, es la del 1 de julio de 2024, somos del criterio que, tras una lectura de la Querella presentada, **no surgen alegaciones de tal naturaleza que**, **de probarse**, **podrían cambiar el resultado de la elección**. **Por ende**, **el escrito no cumplió con las exigencias que requiere el Art. 10.15 del Código Electoral**, *supra*. **El apelante solo**

---

[17] Véase, Querella pág. 1.

**alegó tener derecho a un recuento**, **pero se limitó a mencionar que la ventaja podía ser disminuida y ni tan siquiera arguyó que sería suficiente para cambiar el resultado de la elección**.

Finalmente, concluimos que el segundo señalamiento de error tampoco fue cometido. **Dando por ciertos**, **y de la forma más favorable para el apelante**, **todos los hechos bien alegados en su reclamación**, **determinamos que este último no tiene derecho a remedio alguno**.

Aun asumiendo que el Sr. Hernández Alvarado recurrió en tiempo al foro judicial, y que también solicitó la revisión mediante el Art. 13.2 del Código Electoral, *supra*, los remedios solicitados eran improcedentes. Tras un análisis de las alegaciones contenidas en la Querella, nos percatamos de que el Sr. Hernández Alvarado alega tener derecho a un recuento que, como cuestión de derecho, no tiene. Por ejemplo, no se hace alusión a información específica que demuestre de forma patente que, en efecto, existía un margen de 100 votos o menos entre ambos aspirantes. Sino que, por el contrario, basa sus argumentos en información recibida por terceros que entienden que, si se informaban colegios adicionales, la ventaja pudiera ser disminuida.

En definitiva, **la Querella no establece una reclamación plausible que justifique la concesión de un remedio**. **Sino que**, **el remedio solicitado se basa en alegaciones conclusorias que no son suficientes**. **Habiéndose incumplido con el estándar de plausibilidad**, **procedía la desestimación de la Querella**. *Costas Elena y otros v. Magic Sport y otros, supra*.

Por basarse en panoramas altamente especulativos, el foro primario no tenía que dar por cierto que la ventaja era de 98 votos y, en consecuencia, el recuento solicitado era improcedente. En vista de lo anterior, los remedios solicitados por el apelante, entiéndase, el *mandamus* y la sentencia declaratoria, no podían ser

concedidos. A tales efectos, actuó correctamente el Tribunal de Primera Instancia al declarar No Ha Lugar la Querella ante su consideración.

**IV.**

Por los fundamentos que anteceden, los que hacemos formar parte de este dictamen, confirmamos la "Sentencia" apelada, emitida por el Tribunal de Primera Instancia, Sala de San Juan.

**Notifíquese inmediatamente.**

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones